[No. 14535.   Department Two.   April 29, 1918.]

## MYER S. RUBENS, *Respondent,* v. MAX RUBENS, *Appellant.*[1]

APPEAL—REVIEW—FINDINGS. On a trial *de novo* on appeal, the supreme court must examine the evidence and determine what findings should have been made, disregarding testimony erroneously admitted.

PARTNERSHIP—CONTRACT—CONSTRUCTION — DISSOLUTION — NOTICE. Under a partnership agreement providing that if a certain partner should "want" to withdraw before January 1, 1917, he would lose all interest in the partnership, the expression of a desire to withdraw without affirmative action does not dissolve the partnership; and where no notice of dissolution was given prior to January 1, 1917, when suit was brought, he did not lose all interest in the partnership.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered May 24, 1917, upon findings in favor of the plaintiff, in an action to dissolve a partnership, tried to the court. Affirmed.

*Smith & Mack,* for appellant.

*W. W. Clarke* and *Carl Ultes, Jr.,* for respondent.

HOLCOMB, J.—This action was brought by respondent for the purpose of dissolving a copartnership, and for an accounting.

Respondent was a stepson of the appellant and had worked for him about twelve years prior to the execution of the contract, which is as follows:

"This agreement made and entered into the 20th day of October, 1914, between Max Rubens, party of the first part, and Myer S. Rubens, party of the second part, Witnesseth:

"That whereas the said party of the first part is the owner of the business carried on by him in the city of Spokane known as the 'Spokane Stove Repair Works'

[1]Reported in 172 Pac. 831.

in which said second party has been employed for a number of years by first party, now in consideration thereof and of the mutual benefits to be derived therefrom, it is hereby agreed that after the first day of January, 1915, and for a term of ten (10) years thereafter the said business is to be carried on by said parties as a copartnership under the firm name and style of Spokane Stove Repair Works, the said first party to be the owner of two-thirds interest in all the stock of goods, fixtures, horse and wagon, tools and implements then on hand and the second party to own one-third interest in said stock of goods, etc., and all debts if any owing for goods received in December, 1914, which shall be on hand January 1st, 1915, an inventory of said December goods to be taken on January 1st, 1915.

"No goods shall be bought from now until January 1st, 1915, without the consent of first party. All monies outstanding on January 1st, 1915, shall solely belong to first party, but second party agrees to use his best efforts to collect the same.

"It is agreed that the stock of goods, fixtures, wagon, horse, tools and implements on January 1st, 1915, shall arbitrarily be valued at $9,000, just as if an inventory had been taken, the goods received in December, 1914, and still on hand on January 1st, 1915, however, to be added hereto.

"The said first party is to receive a salary of $300 per month and the second party a salary of $27.50 per week.

"The said first party shall have the right to overdraw his account $700 per year, and the second party $200 per year, and neither party can, after the expiration of the first two years, draw out more than 25 per cent in his share of so much of the capital as shall then exceed $9,000.

"If second party should want the partnership dissolved before January 1st, 1917, he shall lose all his interest as a partner. If he should want to withdraw from the partnership before the first day of January, 1920, he is to lose 50 per cent of his share of the profits then made, that is, he is to receive 16 2-3 per cent of

the net profit made during the five years; if he should withdraw after January 1st, 1920, but before January 1st, 1925, he is to lose 25 per cent of his share of all the net profits made after January 1st, 1915, that is, he shall in settlement be entitled only to 25 per cent instead of 33 1-3 per cent of the net profits, in addition to the $3,000, the value of one-third of the stock on hand January 1st, 1915.

"All disbursements have to be made by check.

"During the life of the copartnership no goods can be ordered except by the consent of both parties.

"First party agrees to advance to the copartnership during January, 1915, two thirds of sum needed to pay necessary expense, to be repaid to him as soon as possible, and second party agrees to advance one-third of such sum.

"In witness whereof, the parties have hereunto and to a duplicate hereof set their hands and seals this 20th day of October, 1914.

                    "Max Rubens      (Seal)
                    "Myer S. Rubens (Seal)"

Some quarreling and bickering were engaged in between the appellant and respondent without defeating the ends of the partnership relation. No notice of dissolution was given appellant until the service of the complaint in this action, February 1, 1917.

By the decree of the court, respondent was awarded the sixteen and two-thirds per cent of the profits, together with the $3,000, the one-third interest in the partnership after deducting the overdraft, leaving a total of $4,672.12.

The appellant makes eight assignments of error:

I. The court erred in admitting the testimony of appellant's attorney, over the objection of the appellant. Both the appellant and respondent went together to the attorney's office and consulted in regard to the making of the contract. Respondent claims that the attorney's evidence was admissible, although the general rule, Rem. Code, § 1214, is that any communica-

tions made by the client to the attorney, and *vice versa*, in the course of professional employment are privileged; claiming that there is a well settled exception to this general rule where a third party is present at the time of the communication and such third party later becomes a party to a suit against the client. This being an equity case, a trial *de novo* in this court, we may decide it by disregarding the testimony of the attorney. On a trial *de novo* on appeal the supreme court must examine the evidence and determine what findings should have been made. *Bunger v. Pruitt,* 73 Wash. 569, 132 Pac. 237.

Assignments of error 2, 3 and 4 are without merit and we will not discuss them further.

Assignments of error 5, 6, 7, and 8 relate to the entering of a judgment for the $3,000 for respondent's one-third interest in the partnership, and may be discussed as one. This brings us to the construction of the contract and such evidence as may aid in its proper construction. In the first paragraph of the contract we find the clause, "the said first party [appellant] to be the owner of two-thirds interest in all the stock of goods, fixtures, horse and wagon, tools and implements then on hand, and the second party [respondent] to own one-third in said stock of goods, etc." The forfeiture or dissolution clause is as follows:

"If second party should want the partnership dissolved before January 1st, 1917, he shall lose all his interest as a partner. If he should want to withdraw from the partnership before the first day of January, 1920, he is to lose 50 per cent of his share of the profits then made, that is, he is to receive 16 2-3 per cent of the net profits made during the five years; if he should withdraw after January 1st, 1920, but before January 1st, 1925, he is to lose 25 per cent of his share of all the net profits made after January 1st, 1915, that is, he shall in settlement be entitled only to 25 per cent in-

stead of 33 1-3 per cent of the net profits, in addition to the $3,000, the value of one-third of the stock on hand on January 1st, 1915.''

Upon reading this clause carefully, it is plain that the respondent is to lose all interest in the partnership if he should want it dissolved before January 1, 1917, but if he should want to withdraw before the 1st day of January, 1920, he is to lose only fifty per cent of his share of the profits then made; that is, he is to receive sixteen and two-thirds per cent of the net profit made during the five years.

There is some contention as to the meaning of the word ''want,'' appellant asserting that, inasmuch as respondent expressed a desire or ''wanted'' to dissolve the partnership, that fact *ipso facto* dissolved the partnership and forfeited the contract. But as no affirmative action was taken by respondent, either by notice or abandonment, the activities of the partnership continuing until this suit, and no dissolution taking place prior to January 1, 1917, this contention can avail appellant nothing.

Although the contract could have been more certain, we find that, disregarding the testimony of appellant's attorney, there is sufficient evidence to sustain the trial judge's findings. We therefore conclude that the judgment should be affirmed. It is so ordered.

ELLIS, C. J., CHADWICK, MOUNT, and WEBSTER, JJ.. concur.